UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEOPOLD R. BRANDENBURG SR., <br><br> Plaintiff, <br><br> v. <br><br> ANTONY J. BLINKEN, <br> U.S. Sec'y of State, <br><br> Defendant. | Civil Action No. 22-2120 (BAH) <br><br> Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Leopold Brandenburg brings this action against his former employer, the head of the Department of State ("DOS") in his official capacity, claiming that he was wrongfully terminated in 2013 and that he was improperly denied an overpayment waiver, which would have freed him of the obligation to repay the one year of excess salary he erroneously received following that termination. Defendant has moved to dismiss all of plaintiff's claims, Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 47, on the grounds that subject matter jurisdiction over a portion of plaintiff's challenges is lacking, and that plaintiff otherwise fails to state plausible claims to relief. For the reasons explained below, defendant's motion is granted.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Summarized below is the relevant factual background, followed by the procedural history leading to the pending motion.[1]

---

[1] While matters "outside the pleadings" generally may not be considered without converting the motion to dismiss to one for summary judgment, *see* FED. R. CIV. P. 12(d), a court deciding a motion to dismiss may, without triggering the conversion rule, consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013). In this case, plaintiff's complaint stems from and references his previous administrative proceedings before the Equal Employment Opportunity Commission ("EEOC"), and the documents associated with that administrative record are therefore considered as

1

Plaintiff was a federal employee of the Social Security Administration ("SSA") when, in 2010, he was selected for a "Limited Non-career Appointment" to the U.S. Embassy in Mexico City as a Regional Federal Benefits Officer, in which capacity he was paid by the Department of State ("DOS").  Pl.'s Complaint ("Compl.") at 4, ECF No. 1; Compl., Ex. 2, EEOC Decision On Request for Reconsideration ("EEOC Reconsideration Dec.") at 1, ECF No. 1-2.  Plaintiff remained in that new role for nearly three years, but alleges that he "was unjustly and prematurely separated from [that] position" on August 3, 2013 "and returned to the United States," at which point he was transferred back to the SSA.  Compl. at 4; EEOC Reconsideration Dec. at 1.

Unhappy with the timing of that transfer and believing he should have remained in his Embassy role for at least another year, plaintiff filed an equal employment opportunity ("EEO") complaint against the SSA, alleging that the separation and transfer amounted to harassment, retaliation, and discrimination on the basis of national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  *See* Def.'s Mot., Ex. 1, Formal EEO Complaint of Discrimination Against SSA (Dec. 2, 2013) ("2013 SSA EEO Complaint") at 2, ECF No. 47-1; *Elliot J. v. Soc. Sec. Admin.*, EEOC Appeal No. 0120160437, 2018 WL 1181116, at *1 (Feb. 22, 2018).  He received a Final Agency Decision ("FAD") denying his claims on June 19, 2015, but did not appeal to the Equal Employment Opportunity Commission ("EEOC") until October 29, 2015, resulting in the dismissal of that appeal as untimely filed after the July 20, 2015 deadline. *See Elliot J.,* EEOC Appeal No. 0120160437, 2018 WL 1181116, at *1.

---

relevant factual background without converting the instant motion into a motion for summary judgment.  *See Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (noting that this principle applies whether the relevant documents are "attached as exhibits to the complaint" or are "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss" (citations and internal quotation marks omitted)).

Meanwhile, for one year following plaintiff's transfer back to the United States, until August 2014, plaintiff received both his SSA salary and a salary from DOS as if he had remained in the Embassy position, resulting in a total "overpayment" of over $103,000. Compl. at 4; Def.'s Mot., Ex. 4, Final Agency Decision ("FAD") at 9, ECF No. 47-1.[2]

Several months later, DOS attempted to correct this error. Plaintiff was formally notified of the salary overpayment in 2015. FAD at 9. Plaintiff then sought a waiver from his obligation to pay back that unearned salary, *id.*, which an authorized official "may" grant, in whole or in part, though that discretion is curtailed under certain circumstances, *see* 5 U.S.C. § 5584(a), (b). DOS denied the waiver request on March 28, 2019, explaining that "a waiver may not be granted if there exists in connection with the claim an indication of fraud, misrepresentation, fault or lack of good faith on the part of the employee," and that fault was present in this case because "it is the responsibility of the employee to verify the accuracy and correctness of the Earnings and Leave Statements and to report any errors in a timely manner," which plaintiff had not done. FAD at 5, 10; *see also* 5 U.S.C. § 5584(b)(1) ("The authorized official . . . may not exercise his authority under this section to waive any claim if, in his opinion, there exists, in connection with the claim, an indication of . . . fault . . . on the part of the employee."). DOS did, however, approve plaintiff's request to be put on a repayment plan, allowing him to repay the money at a 1% interest rate over a period of over four years. Def.'s Mot., Ex. 3, Nicole Rothschild Letter Dated May 13, 2019 & Signed Payment Plan Agreement, ECF 47-1.

---

[2]  The cause of this overpayment remains murky, but appears to be merely an administrative error. Plaintiff alleges that the overpayment was meant as an off-the-books settlement for his prior EEO claims regarding his separation from DOS, Compl. at 4, but offers no support for that assertion, which also finds no basis in the administrative record attached to the Complaint and briefing. At the same time—and inconsistent with the theory that the parties understood the overpayment to be a form of intentional compensation at the time—plaintiff also asserts that he alerted DOS to the overpayment. *Id.* As such, plaintiff's speculations as to DOS's motives for the overpayment cannot be credited. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (explaining that the court need not accept inferences drawn by the plaintiff where those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions).

Plaintiff sought to challenge DOS's denial of the overpayment waiver through administrative channels. To this end, plaintiff timely contacted an EEO Counselor on April 16, 2019, and subsequently filed another formal EEO complaint, this time against DOS, claiming the denial amounted to unlawful retaliation for his prior EEO complaint against SSA. FAD at 1–3. On January 22, 2020, DOS issued a Final Agency Decision, rejecting the retaliation claim on the basis that plaintiff had not "provide[d] evidence of a nexus between his EEO activity" and the waiver denial five years later. *Id.* at 13. The EEOC's Office of Federal Operations affirmed, *see* Def.'s Mot., Ex. 2, EEOC Decision ("EEOC Dec.") at 6, ECF No. 47-1, and subsequently denied plaintiff's request for reconsideration on November 29, 2021, *see* EEOC Reconsideration Dec. at 2–3.

Finally, plaintiff turned to federal court. He initiated the instant suit by filing a *pro se* form complaint in the Southern District of Florida, where he currently resides. *See* Compl. By plaintiff's own description, the "case presents two claims": one challenging the denial of the overpayment waiver, and another for "unjustified termination of employment, harassment, [and] retaliation," based on his 2013 separation from DOS. Meet & Confer Stmt. at 1–2, ECF No. 45. Plaintiff seeks relief from his obligation to repay the $103,000 in overpayment alongside "damages in an amount equal to the overpaid salaries." Compl. at 5. Defendant moved to dismiss the Florida action for improper venue and lack of subject matter jurisdiction or, in the alternative, for transfer of venue. *See* Def.'s Mot. to Dismiss or to Change Venue at 1, ECF No. 24. The latter motion was granted, and on July 20, 2022, the action was transferred to this Court. *See* Order (July 15, 2022) at 3, ECF No. 30; Not. of Transfer, ECF No. 31.

Defendant has once again moved to dismiss, both for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted, *see* Def.'s Mot. at 1, which motion

is now ripe for resolution, *see* Def.'s Reply in Supp. Mot. to Dismiss ("Def.'s Reply"), ECF No. 50.

## II.     APPLICABLE LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject matter jurisdiction over the claims asserted. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  Absent subject matter jurisdiction over a case, the court must dismiss it.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006); FED. R. CIV. P. 12(h)(3) (requiring dismissal of action "at any time" the court determines it lacks subject matter jurisdiction).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' . . . and upon such facts determine jurisdictional questions."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  The court need not accept inferences drawn by the plaintiff, however, if those

inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Moreover, in evaluating subject matter jurisdiction, the court "may consider materials outside the pleadings." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016); *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Herbert*, 974 F.2d at 197 (in disposing of motion to dismiss for lack of subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

### B.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a] plaintiff need not make 'detailed factual allegations,'" but the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *VoteVets Action Fund v. United States Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Consequently, "a complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *VoteVets Action Fund*, 992 F.3d at 1104 (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)) (alteration in original).

In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022). Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio*, 797 F.3d at 19 (citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

### III. DISCUSSION

Plaintiff's complaint challenges both his 2013 separation from DOS and the denial of his overpayment waiver in 2019. Each claim, however construed, presents separate legal obstacles fatal to plaintiff's suit. As to the former, plaintiff's claim fails for lack of exhaustion of administrative remedies, and therefore must be dismissed under Rule 12(b)(6). While plaintiff properly exhausted his remedies as to the latter claim, his challenge to the 2019 denial of his requested relief to waive repayment of his overpayment must nonetheless be dismissed on other grounds. To the extent plaintiff's complaint frames his challenge to the denial of the overpayment waiver as a claim under the Administrative Procedure Act ("APA"), it must be dismissed under Rule 12(b)(1) for lack of jurisdiction and for failure to state a claim under Rule 12(b)(6). If, in addition or in the alternative, plaintiff frames this challenge as a retaliation claim under Title VII, his allegations are insufficient to state a claim upon which relief can be granted, necessitating dismissal under Rule 12(b)(6). These issues are addressed in turn.

#### A. Plaintiff's Wrongful Termination Claim Must Be Dismissed for Failure to Exhaust Administrative Remedies

##### 1. *Exhaustion Requirement Generally*

"Before a federal employee can file suit against a federal agency for violation of Title VII, the employee must run a gauntlet of agency procedures and deadlines to administratively

exhaust his . . . claims." *Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017); *see also* 42 U.S.C. § 2000e-16(c).  The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up), and "ensure[s] that the federal courts are burdened only when reasonably necessary," *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  The EEOC has issued detailed procedures to govern the administrative resolution of employment discrimination claims against federal agencies under Title VII.  *See* 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105.  As relevant here, these procedures require that a federal employee who believes he has been "discriminated against . . . must initiate contact with [the agency's EEO c]ounselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  Further, the regulations provide that, when an individual properly initiates and pursues a complaint, any appeal from a FAD must be "filed within 30 days of receipt" of that decision, *id.* § 1614.402(a), and that "[i]f an appellant does not file an appeal within the time limits of this subpart, the appeal shall be dismissed by the [EEOC] as untimely," *id.* § 1614.403(c).  Finally, any civil action in federal court based on claims to relief under Title VII must be filed "[w]ithin 90 days of receipt of the [EEOC]'s final decision on an appeal."  *Id.* § 1614.407(c).

Exhaustion inquiries focus on each discrete discriminatory act that is alleged by an employee.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed [administrative] charges." *Id.* at 113.  Thus, a Title VII complainant "'must timely exhaust administrative remedies *for each discrete act alleged*[,]' even if the acts are related."

*Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) (Jackson, K.B., J.) (quoting *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013)) (emphasis in original).

### 2. *Plaintiff Failed Timely to Exhaust Claims Based on His 2013 Separation from the Department of State.*

Besides challenging the overpayment waiver determination, plaintiff's Complaint purports to challenge his "unjust[] and premature[] separate[ion] from his position" with DOS in 2013. Compl. at 4. Yet, in light of the rigorous procedural steps and timelines applicable to Title VII claims, none of plaintiff's claims regarding that 2013 employment action have been exhausted.

First, while the record indicates that plaintiff pursued an EEO complaint beginning in late 2013, that complaint concerned SSA alone, not DOS. *See* 2013 SSA EEO Complaint at 1–2. Nothing in the record indicates that plaintiff ever contacted an EEO counselor at DOS within 45 days of his separation in 2013. Plaintiff argues that this complaint should nonetheless be considered as having been brought against DOS as well as SSA, because, on the merits, that complaint concerned his treatment while working under DOS supervision at the Embassy. *See* Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 11–12. As an initial matter, this still does nothing to establish whether plaintiff ever timely contacted a DOS EEO counselor, and it introduces two further exhaustion problems. For one, even if plaintiff's SSA complaint were relevant, he did not timely pursue his appeal to the EEOC within 30 days of the receipt of the relevant FAD, and his claims were therefore dismissed, pursuant to 29 C.F.R. § 1614.403(c). *See Elliot J.*, EEOC Appeal No. 0120160437, 2018 WL 1181116, at *1. For another, plaintiff did not initiate this civil suit until 2022, nearly four years after his 90-day deadline to file suit following the EEOC decision on appeal, which was dated February 22, 2018. *See id.* at *1–2.

Defendant is therefore correct that, to the extent plaintiff's complaint challenges his allegedly wrongful separation from DOS in 2013, those challenges must be dismissed under Rule 12(b)(6) as improperly exhausted.

### B. Plaintiff's Challenge to the Department of State's Denial of his Debt Waiver Fails to State a Claim for Either Unlawful Agency Action Under the Administrative Procedure Act or Retaliation Under Title VII.

The only remaining claims, then, are based on plaintiff's challenge to DOS's determination that plaintiff must repay his salary overpayment. As narrated *supra* in Part I, plaintiff timely challenged that determination before the EEOC, culminating in its November 29, 2021 denial of his request for reconsideration, after which he brought the instant suit within the required 90-day window. These claims, therefore, are properly exhausted.

Although plaintiff's claims based on the denial of the debt waiver are indisputably exhausted, the precise nature of those claims in the instant suit is less clear. Plaintiff cites 28 U.S.C. § 1331, 5 U.S.C. § 5584, 22 C.F.R. § 34.18, and 29 C.F.R. § 1614 as the bases for his suit. Compl. at 3. For plaintiff to maintain an action against the United States in federal court, a statute must confer subject matter jurisdiction on the district court, and the United States must waive sovereign immunity as to the cause of action. *See Floyd v. Dist. of Columbia*, 129 F.3d 152, 155–56 (D.C. Cir. 1997) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992)). Plaintiff's cited statutory and regulatory bases do not satisfy both these prerequisites, so some guesswork is required. For example, 28 U.S.C. § 1331 grants subject matter jurisdiction to the extent plaintiff's suit presents a federal question, but does not itself waive sovereign immunity. Meanwhile, 5 U.S.C. § 5584, which is further explicated by its implementing regulations under 22 C.F.R. § 34.18, only addresses an agency official's power to waive claims against an agency employee, and neither confers jurisdiction on a district court to oversee that

10

decision nor addresses sovereign immunity. *See, e.g.*, *Woodruff v. Dep't of Transp.*, 448 F. Supp. 2d 7, 11–12 (D.D.C. 2006). Finally, 29 C.F.R. § 1614, as explained *supra* in Part III.A.1, contains the regulations setting out the procedural requirements governing EEOC actions, but does not amount to a statutory grant of subject matter jurisdiction or a waiver of sovereign immunity.

Nevertheless, where, as here, a plaintiff is proceeding *pro se*, the complaint "is to be liberally construed," *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 (D.C. Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and the Court therefore may appropriately consider other viable causes of action that may fit plaintiff's allegations, *see, e.g.*, *Alridge v. Rite Aid of Washington, D.C., Inc.*, 146 F. Supp. 3d 242, 247–48 (D.D.C. 2015). Very liberally construed, plaintiff's complaint may be read as attempting to state a claim under (1) the APA, 5. U.S.C. § 700, *et seq.*, challenging DOS's action of denying the overpayment waiver, pursuant to 5 U.S.C. § 5584 and its implementing regulations, and (2) Title VII, 42 U.S.C. § 2000e, *et seq.*, challenging the denial as unlawful retaliation for his prior EEO claims regarding his "unjustified separation" in 2013. *See* Compl. at 4. Under either possible framing, however, plaintiff fails to state a claim upon which relief could be granted, requiring dismissal of this lawsuit.

### 1. *Any APA Claim Must Be Dismissed Under Rule 12(b)(1) and Rule 12(b)(6).*

The APA allows plaintiff to challenge in federal court a final agency action as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). Given that plaintiff's Complaint requests vacatur of DOS's waiver determination, *see* Compl. at 5 ("Plaintiff is seeking relief from repayment of the $103,000 salary

overpayment"), one of his claims plausibly amounts to a challenge to that determination under the APA.

The statute does not, however, allow for a claim for money damages. *See* 5 U.S.C. § 702 (waiving sovereign immunity only for claims "seeking relief other than money damages"). Thus, insofar as a monetary component is part of the relief sought in plaintiff's APA challenge, his claims for additional money damages are dismissed under Rule 12(b)(1).

To the extent plaintiff seeks relief from the denial itself, plaintiff has not plausibly alleged that this agency action was "arbitrary, capricious, [or] an abuse of discretion," necessitating dismissal of the remainder of the claim under Rule 12(b)(6). Denials of debt waivers are governed by 5 U.S.C. § 5584, which provides that an authorized official "may . . . waive[] in whole or in part" "[a] claim of the United States against a person arising out of an erroneous payment of pay" when its collection "would be against equity and good conscience and not in the best interests of the United States." *Id.* § 5584(a). The authorized official is required to deny a waiver request under several enumerated circumstances, including when "in his opinion, there exists, in connection with the claim, an indication of fraud, misrepresentation, fault, or lack of good faith on the part of the employee." *Id.* § 5584(b)(1). No analogous subsection provides circumstances under which waiver is ever mandatory. The implementing regulations further explain that "[f]ault is considered to exist if in light of the circumstances the employee knew or should have known through the exercise of due diligence that an error existed but failed to take corrective action," as evaluated under "a reasonable person standard," and that employees "are . . . expected to have a general understanding of the Federal pay system applicable to them." 22 C.F.R. § 34.18(b)(ii).

In this case, plaintiff's requested waiver was denied because the DOS decisionmaker found plaintiff at "fault," as that term is used in the governing statute, because plaintiff knew he had been receiving the salary overpayments past his termination date and it would not have been reasonable for him to assume the payments were meant as unofficial compensation for his SSA EEO case in the absence of any "official documents from the [DOS] clearly documenting any resolution or outcome of an EEO case." FAD at 4–5. The allegations in plaintiff's Complaint are entirely consistent with that reasoning: he alleges both that he was aware of the overpayments during the year throughout which he received them and that he "claimed the overpaid salaries as compensation and remedies" for his prior EEO claim against the SSA. Compl. at 4. Instead, he rests his challenge on a different understanding of "fault," claiming that he "ha[d] done nothing wrong," *id.*, that no "action by the Plaintiff can constitute fraud, misrepresentation, or lack of good faith," and that DOS erred by "arbitrarily determin[ing]" that "he was at fault in creating the salary overpayment and he acted with fraud, misrepresentation and lack of good faith." Pl.'s Opp'n at 3, 9. Under the governing standards, however, DOS was not required to—and indeed, did not—make the type of finding of moral blameworthiness that plaintiff now seeks to contest. DOS concluded only that a reasonable person in plaintiff's position, possessed of the knowledge of the applicable federal pay rates, would have known the salary overpayments were a mistake. *See* FAD at 5. No allegations in plaintiff's Complaint would permit the conclusion that fault, in this narrow sense, was absent. Plaintiff has therefore failed to state a claim that the denial of his waiver request was arbitrary or capricious, requiring dismissal of the APA claim under Rule 12(b)(6).

### *2. Any Title VII Claim Must Be Dismissed Under Rule 12(b)(6).*

Plaintiff's complaint may also be read as alleging that DOS denied his waiver request as a form of retaliation for the EEO claims he had pursued following his transfer back to the SSA in 2013, in violation of Title VII. *See* Compl. at 4 (referencing the prior EEO activity and alleging that "[i]nstead" of his prevailing on the merits of those prior claims, "the [DOS] denied plaintiff's appeals and forced him into a re-payment agreement under threat of garnishment or property liens," amounting to an "adverse action" against him). This understanding of plaintiff's allegations is consistent with the theory under which his pursued his administrative challenges. *See* FAD at 2–3.

"To establish a prima facie case of retaliation, a [Title VII] claimant must show that: (1) [he] engaged in a statutorily protected activity; (2) [he] suffered a materially adverse action by [his] employer; and (3) a causal connection existed between the two." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). While the first element that plaintiff engaged in a statutorily protected activity by pursuing his EEO complaint regarding his 2013 transfer is undisputed, plaintiff's allegations fall short of establishing the other two requirements.

Actionable adverse actions in a Title VII retaliation claim must be "materially adverse" in an "objective" sense. *Chambers v. Dist. of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022). "A materially adverse action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "Typically, a material adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Bridgeforth v. Jewell*, 721

F.3d 661, 663 (D.C. Cir. 2013) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). The denial of a debt waiver cannot be called materially adverse, for that decision merely obligates an individual to repay money to which he had no entitlement in the first place, and such a waiver is never available as of right. *See* 5 U.S.C. § 5584(a) (providing that a waiver "may" be granted for a claim "arising out of an erroneous payment of pay"). A reasonable person would not be dissuaded from seeking a remedy for a Title VII violation by knowing that, if he went forward, he would not be able to keep an unearned windfall, absent any risk to his actual earnings or benefits.

Furthermore, plaintiff cannot plausibly allege a causal connection between his EEO activity following his 2013 separation and DOS's denial of the debt waiver. Under certain circumstances, temporal proximity between the protected activity and the adverse action can plausibly establish causation, but where it is the only relevant factual allegation, "the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (internal quotation omitted). Here, four years separate the EEOC's dismissal of plaintiff's untimely appeal of his SSA EEO claim and DOS's denial of his debt waiver request, seriously undercutting any possible inference of causality. Moreover, as set out *supra* in Part III.B.1, DOS explained its denial as bound by the statutory requirement that no waiver be granted where "fault" is found on the part of the overpaid individual. Plaintiff's Complaint acknowledges the relevant facts that went into such a finding—that he was aware he was being overpaid and that he did not attempt to return the money, as he believed it was his due as "compensation and remedies" for his prior complaints—and it is devoid of other factual allegations to support any theory that DOS's finding was a mere pretext, and that the true cause of the denial lay elsewhere.

Plaintiff has therefore failed to state a claim that the denial of his waiver request in 2019 amounted to unlawful retaliation for his EEO activity following his 2013 transfer back to the SSA, and the Title VII claim must also be dismissed under Rule 12(b)(6).

## VI. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: July 11, 2023

_____
BERYL A. HOWELL
U.S. District Court Judge